# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**PAMELA A. THORNS**                    **CASE NO.  6:19-CV-1243**

**VERSUS**                                      **JUDGE JUNEAU**

**U. S. COMMISSIONER OF SOCIAL SECURITY**        **MAGISTRATE JUDGE WHITEHURST**

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be AFFIRMED.

## ADMINISTRATIVE PROCEEDINGS

The claimant was 46 years old at the time she applied for benefits and 50 years old on the date of the Commissioner's final decision.[1]  The claimant graduated from college with a degree in accounting and the VE testified that she had past relevant work experience as a bookkeeper and as a teacher's aide (Tr. 21, 97, 108, 262).[2]

---

[1] *See* Official Transcript at pp. 12, 15, 233.
[2] Tr. 21, 97, 108, 262.

1

The claimant sought a period of disability and SSI on grounds that she suffers from post-traumatic injuries to her ankles, which were broken in an automobile accident, and high blood pressure. She alleges her disability began on May 4, 2012.

After the claimant's application for benefits was denied by the Agency,[3] she requested a hearing before an administrative law judge ("ALJ"). On December 21, 2018, the ALJ issued a decision denying the claimant's applications for DIB and SSI,[4] concluding that the claimant was not disabled within the meaning of the Social Security Act ("the Act"). In denying benefits, the ALJ noted that prior to her current applications for benefits, the claimant filed an application for disability benefits on February 25, 2013, which resulted in an unfavorable decision on July 18, 2014.[5] Because the prior application's denial was administratively final, the ALJ did not consider whether the claimant was disabled prior to July 18, 2014.[6] However, the ALJ explained that, to the extent evidence from before July 18, 2014 was relevant to her current application, the ALJ considered such evidence.

The Appeals Council upheld the ALJ's decision on July 23, 2019.[7] Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose

---

[3] Tr. 140-143.
[4] Tr. 12-22.
[5] Tr. 15.
[6] *Id.*
[7] Tr. 1-3.

of the Court's review pursuant to 42 U.S.C. § 405(g). The claimant then filed this action seeking review of the Commissioner's decision.

## SUMMARY OF PERTINENT FACTS

The claimant was born in 1968 and was 50 years old at the time of benefits were denied. She has worked in the past as a bookkeeper and as a resource teacher for the Acadia Parish School Board.

## ANALYSIS

### A.    STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[8] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[9] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[10]

---

[8] *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).
[9] *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).
[10] *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[11]   In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[12] Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[13]   Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[14]

## B.    Entitlement to Benefits

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[15]   Every individual who meets certain income and resource requirements, has filed an application for benefits, and

---

[11] 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).
[12] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).
[13] *Martinez v. Chater*, 64 F.3d at 174.
[14] *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.
[15] See 42 U.S.C. § 423(a).

is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[16]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[17]  A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[18]

## C.    **Evaluation Process and Burden of Proof**

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process required the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix

---

[16] 42 U.S.C. § 1382(a)(1) & (2).
[17] 42 U.S.C. § 1382c(a)(3)(A).
[18] 42 U.S.C. § 1382c(a)(3)(B).

1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work at step five.[19]  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[20]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[21] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[22]  The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[23]

The claimant bears the burden of proof on the first four steps.[24]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[25]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by

---

[19] 20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).
[20] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).
[21] 20 C.F.R. § 404.1520(a)(4).
[22] 20 C.F.R. § 404.1545(a)(1).
[23] 20 C.F.R. § 404.1520(e).
[24] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.
[25] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

expert vocational testimony, or by other similar evidence.[26]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[27]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[28]

**D.    THE ALJ'S FINDINGS AND CONCLUSIONS**

In this case, the ALJ found that the claimant worked as both a bookkeeper and as a resource teacher for the Acadia Parish School Board in 2017, albeit part-time. In addressing the relevant time period, the ALJ further determined that the claimant's earnings during the second quarter of 2017 amounted to substantial gainful activity during this period because her earnings exceeded the average monthly amount allowed under the regulations.  However, the ALJ determined that there has been a continuous 12-month period during which the claimant did not engage in substantial gainful activity, and the ALJ's findings addressed the period during which the claimant did not engage in substantial gainful activity.[29]  The ALJ determined that the claimant meets the insured status requirements of the Act through December 31, 2017, and the claimant does not challenge this.  Thus, the claimant must establish disability on or before that date in order to be entitled to a

---

[26] *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[27] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[28] *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988). See, also, 20 C.F.R. § 404.1520(a)(4).

[29] Tr. 18.

period of disability and disability benefits.[30]  The claimant challenges the ALJ's conclusion that her employment as a substitute resource teacher qualifies as engagement in substantial gainful activity.

At step two, the ALJ found that the claimant has the following severe impairments: post-traumatic arthritis of the ankles bilaterally; obesity; hypertension; and hypothyroidism.[31]  This finding is supported by evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[32] The claimant challenges this finding.

At step four, the ALJ found that claimant has the residual functional capacity to perform sedentary work with the following exceptions: only occasional kneeling, stooping, crouching, and crawling; never climbing ramps, stairs, ladders, ropes, or scaffolds; never operating bilateral foot controls; and requires a walker to ambulate over uneven terrain during the workday.  Therefore, the ALJ found that the claimant is capable of performing past relevant work as a bookkeeper, a job which does not require performance of the work-related activities precluded by the claimant's RFC.[33]  The claimant challenges this finding.

---

[30] Tr. 16.
[31] Tr. 18.
[32] Tr. 326.
[33]  Tr. 21.

E.    **<u>ANALYSIS OF ALLEGED ERRORS</u>**

The claimant alleges the following errors by the ALJ:

1. The SSA erred in failing to notify counsel of record and deprived claimant of the opportunity to properly prepare for the administrative law hearing.

2. The ALJ erred in failing to consider the transcript of the prior oral hearing held on July 18, 2014, including the work history and medical evidence which was referenced in the jurisdiction and procedural history of the Decision but not included or identified or considered in the court transcript record.

3. The ALJ erred in finding that claimant was engaged in substantial gainful activity despite testimony of subsidized employment and sheltered or special environments under 20 CFR 404.1574(a)(2) and (3).

4. The ALJ erred in finding that claimant's impairment did not meet the severity of impairments under 20 CFR Part 404, Subpart P, Appendix 1 and in the alternative, claimant suffered with slight abnormality when failed to consider the physical condition of claimant's ankles at the hearing and ignored medical evidence establishing claimant had severe limitations which substantially affected her range of motion and ability to walk.

5. The ALJ erred in failing to consider the totality of the claimant's testimony regarding medical treatment and condition.

6. The ALJ erred in accepting the VE's classification of the past relevant work which failed to consider claimant's actual work duties and responsibilities.

The undersigned will consider each argument in turn.

### 1. The ALJ did not err in proceeding with the administrative hearing as scheduled.

The record shows that at the beginning of the administrative hearing, claimant's counsel described problems communicating with the Agency regarding his representation of the claimant.[34]  The ALJ stated that she was inclined to proceed with the hearing but offered to leave the record open so the claimant could submit any additional evidence if needed.[35]  When asked whether he was agreeable to that, claimant's counsel stated, "I would agree with that."[36]

In her brief, the claimant now argues that the ALJ's refusal to continue the administrative hearing was an error because the claimant was not properly prepared for the hearing.  The record shows that neither the claimant nor her counsel requested a continuance at the hearing on grounds counsel was unprepared.  The record does show that the claimant twice requested continuances of the hearing dates, once in writing on June 15, 2018, and again via telephone on July 12, 2018.  Both of these requests were due to claimant's counsel having a conflict and both requests were granted.[37]  Specifically, on the day of the administrative hearing, claimant's counsel contacted the ALJ and stated that he had a doctor's appointment at 9:30 a.m., so the

---

[34] Tr. 79-80.
[35]  Tr. 80.
[36] *Id.*
[37] Tr. 194, 229.

hearing office continued the claimant's hearing until 2:30 p.m.[38]  At no time did claimant's counsel indicate that he was not prepared for the hearing, and when specifically asked whether he was comfortable proceeding on the day of the hearing, he stated that he was.  Additionally, the ALJ expressly left the record open to accommodate counsel and allow additional records to be submitted.

Because the record shows that the claimant, through her counsel, consented to proceed with the administrative hearing and because the record shows that the hearing office rescheduled the hearing to accommodate claimant's counsel's doctor appointment, the undersigned concludes that the ALJ did not err as alleged by the claimant.

### 2. The ALJ did not err in declining to consider the decision from claimant's prior application for benefits and the transcript of the prior hearing held on July 18, 2014.

The claimant argues that the ALJ stated in her Decision that any medical evidence pre-dating July 18, 2014 – which time period had been covered in a prior Decision by a different ALJ, finding that the claimant was not disabled, and which, therefore, is a final decision under the regulations – would be considered "for the limited purpose of determining the effects of the claimant's chronic health problems on her current level of functioning."  The claimant argues, however, that the ALJ did

---

[38] Tr. 229.

not, in fact, reference that medical evidence in any other portion of her Decision and must not have considered it.

The record reflects that the claimant filed a previous application for disability benefits, which was denied by an ALJ decision dated July 18, 2014.[39]  In that prior decision, the ALJ made a decision that the claimant was not disabled from May 4, 2012, through July 18, 2014.[40]  Because the prior decision was a final decision, the current ALJ stated that she would not address whether the claimant was disabled for that same period of time.  Accordingly, the ALJ only considered whether the claimant was disabled from July 19, 2014 forward, and the current ALJ decision found that the claimant was not disabled from July 19, 2014 through the date of the current ALJ's decision, December 21, 2018.[41]  This decision by the ALJ was not error and does not violate the social security regulations.

Moreover, to the extent the claimant argues that the ALJ erred in failing to consider any testimony offered by a former employer at a prior administrative hearing, the undersigned agrees with the Agency that any such evidence would be

---

[39] Tr. 15.

[40] *Id.*

[41] Tr. 12, 15.  As the Agency points out, although the claimant references a July 18, 2014 hearing, there was no such hearing on that date; rather, that was the date of the prior ALJ's decision. *See* Doc. 18 at 4-5.  Because that decision does not relate to the period the ALJ considered, there is no error.  The claimant further argues that at a prior hearing, there was testimony from the claimant's previous employer regarding the details of the claimant's bookkeeper position.  However, there is no evidence in this administrative record regarding the content of a previous administrative hearing. Reviewing courts do not consider evidence outside the administrative record. *Hardman v. Colvin*, 820 F.3d 142, 151 (5th Cir. 2016).  Thus, there is no error here on the part of the ALJ.

redundant, because the claimant testified at her hearing on July 13, 2018  about her past work as a bookkeeper,[42] and the vocational expert ("VE") testified that the claimant's past relevant work included work as a bookkeeper.[43] (Tr. 108). Considering all of the foregoing, the undersigned finds that the testimony of both the claimant herself and her former employer provide substantial evidence supporting the ALJ's finding that the claimant's past relevant work included work as a bookkeeper.

The claimant also argues that the ALJ failed to consider her "underlying injury" and limited the claimant's impairments to "bilateral ankle pain or post-traumatic arthritis of the ankles bilaterally."  Although the decision of the ALJ does not specifically mention a car accident – presumably the accident which caused the claimant's broken ankles – the ALJ specifically referenced the claimant's "post-traumatic arthritis of the ankles bilaterally."[44] (Tr. 18).  As the Agency correctly explains, this means that, in the past, the claimant suffered a traumatic injury that caused arthritis in both of her ankles. The ALJ also correctly noted that the claimant's application for benefits was based, in part, on disability "due to residuals of broken ankles."[45]

---

[42] Tr. 100-03, 105-08.
[43] Tr. 108.
[44] Tr. 18.
[45] Tr. 19.

In her decision, the ALJ discussed John P. Schutte, M.D.'s, treatment for the claimant's bilateral ankle pain, and noted that Dr. Schutte diagnosed the claimant with osteoarthritis of both ankles.[46] The ALJ also discussed claimant's physical therapy for her ankles and the additional medical treatment she received for her ankles.[47]  Considering the foregoing, the claimant's argument that the ALJ did not properly consider the medical evidence with respect to her ankle impairments is without merit.

### 3.  The ALJ did not err in considering the claimant's demonstrated ability to perform some work activity while claiming to be disabled.

The claimant argues that, although her income may have exceeded the income threshold for allowable wages, the ALJ nevertheless erred in finding that she was engaged in substantial gainful activity, because she falls under the exceptions to the income rules.  Specifically, the claimant argues that although she worked as a substitute resource teacher for the Acadia Parish School Board, the School Board accommodated her in several ways because of her impairments.[48]  She therefore

---

[46] Tr. 19-20, 311-16.
[47] Tr. 20, 436-516.
[48] The claimant argues that she was accommodated in the following ways:  (1) not required to have a homeroom because she suffers with extreme pain in her ankles preventing her from moving in the morning; (2) not required to monitor recess because she cannot stand for more than a few minutes at a time and is unable to quickly get to the children to break up any fights; (3) limited to Title 1 or special education "resource" children where she does not have to manage more than ten students at a time; and (4) not required to stay for the entire school day because of her pain level in ankles and limited mobility. Tr. 95-97.

14

argues she is entitled to certain exceptions for the wage rules under 20 C.F.R. 404.1574(a)(2) and (3), which provide:

> 2) We consider only the amounts you earn. When we decide whether your earnings show that you have done substantial gainful activity, we do not consider any income that is not directly related to your productivity. When your earnings exceed the reasonable value of the work you perform, we consider only that part of your pay which you actually earn. If your earnings are being subsidized, we do not consider the amount of the subsidy when we determine if your earnings show that you have done substantial gainful activity. We consider your work to be subsidized if the true value of your work, when compared with the same or similar work done by unimpaired persons, is less than the actual amount of earnings paid to you for your work. For example, when a person with a serious impairment does simple tasks under close and continuous supervision, our determination of whether that person has done substantial gainful activity will not be based only on the amount of the wages paid. We will first determine whether the person received a subsidy; that is, we will determine whether the person was being paid more than the reasonable value of the actual services performed. We will then subtract the value of the subsidy from the person's gross earnings to determine the earnings we will use to determine if he or she has done substantial gainful activity.

> (3) If you are working in a sheltered or special environment. If you are working in a sheltered workshop, you may or may not be earning the amounts you are being paid. The fact that the sheltered workshop or similar facility is operating at a loss or is receiving some charitable contributions or governmental aid does not establish that you are not earning all you are being paid. Since persons in military service being treated for severe impairments usually continue to receive full pay, we evaluate work activity in a therapy program or while on limited duty by comparing it with similar work in the civilian work force or on the basis of reasonable worth of the work, rather than on the actual amount of the earnings.

20 C.F.R. § 404.1574

In essence, the claimant argues that her earnings do not reflect her true level of productivity.  To support this argument, she avers that the accommodations that were made for her were not made for other substitute teachers by the School Board. The claimant argues that the ALJ erred in considering her total amount of earnings as opposed to the amount she actually earned, given her accommodations.

The record shows, however, that the ALJ agreed with the claimant and found that there was a continuous 12-month period during which the claimant did not engage in substantial gainful activity, and the ALJ's findings addressed the period during which the claimant did not engage in substantial gainful activity.  The purpose of the ALJ's finding with respect to the claimant's past work as a teacher's aide, however, was to preliminarily determine whether the claimant could be entitled to disability benefits at all.

Additionally, although the ALJ found that the claimant had past relevant work as a teacher's aide and that such work was performed at the substantial gainful activity level, the ALJ did not rely on claimant's ability to perform such work as the basis of her determination that the claimant was not disabled. With regard to the claimant's continued work as a substitute teacher, the ALJ simply noted that the claimant's "ability to perform some work activity indicates she is not precluded from performing all work."  The ALJ ultimately concluded that the claimant could perform the work of a bookkeeper, which is consistent with the testimony of the

vocational expert's testimony and with the ALJ's RFC assessment.  Accordingly, the ALJ did not err in considering the claimant's demonstrated ability to perform some work activity while claiming to be disabled.

### 4.  The ALJ did not err in finding that claimant's impairment did not meet a listed impairment.

The claimant argues the ALJ erred in failing to find that she satisfies the requirements of a listed impairment under 20 CFR Part 404, Subpart P, Appendix 1. Alternatively, the claimant argues that the ALJ failed to consider the physical condition of claimant's ankles at the hearing and ignored medical evidence showing that the claimant had severe limitations which substantially affected her range of motion and ability to walk.

Under both the regulations and the jurisprudence, the claimant has the burden to establish that she meets a Listing; it is not the Commissioner's burden to prove that the claimant did not satisfy a Listing. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); 20 C.F.R. §§404.1520(d), 416.920(d).  In order to "meet" a Listing, a claimant must establish that she meets each and every medical criteria of the Listing; if a claimant fails to establish any part of the Listing, the claimant does not meet the Listing.  *Sullivan v. Zebley*, 493 U.S. 521, 530 ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how

severely, does not qualify."). The Fifth Circuit has made clear that the criteria for the listings are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).

The claimant identifies Listed Impairment 1.00 -- Musculoskeletal System – and argues that her inability to ambulate effectively satisfies the requirements of this listing. However, "ineffective ambulation" is not a Listed Impairment; rather, it is only one component of certain Listed Impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 1.02, 1.03, 1.04, 1.05, 1.06. Here, the claimant failed to show she met any Listed Impairment, and the ALJ properly so found.

To the extent the claimant argues the ALJ erred in finding that the claimant suffers with only a "slight abnormality" in ambulation, the undersigned finds this, too, is supported by the record. Dr. John Schutte, an orthopedist, examined the claimant on April 15, 2014 and noted that she had "no ambulatory aid; no deformity of the ankle; and no instability of the ankles."[49] He recommended orthotic devices, rather than a hand-held assistive device, as part of her treatment. The claimant has pointed this Court to no additional medical evidence supporting her argument that her ankle problems are disabling. Consequently, the claimant's argument that she

---

[49] Tr. 311.

satisfies a listed impairment because she has "ineffective ambulation" is without merit.

### 5.  The ALJ did not err in considering claimant's gap in treatment and/or conservative treatment for her impairments.

The claimant argues that the ALJ erred because she found that the claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence in the record.  The ALJ noted that the claimant had a gap in treatment for her impairments and the non-use of any pain medication for over a year.[50]  Thus, the ALJ found her lack of treatment of any kind -- not just discontinuing physical therapy -- inconsistent with the claimant's  allegation of disability.

The claimant argues that it was error for the ALJ to fail to recognize that the gap in treatment was due to the fact that she had reached maximum medical improvement from physical therapy and that she stopped taking pain medication because it had adverse side effects.  The claimant also argues that the ALJ did not physically look at her ankles as part of his examination of the record.

First, the ALJ's consideration of the fact that the claimant had conservative treatment for more than a year is relevant and properly considered.  *See, e.g., Parfait v. Bowen*, 803 F.2d 810, 813-14 (5th Cir. 1986) (stating that evidence that a claimant

---

[50] Tr. 20.

receives conservative treatment substantially supports an ALJ's finding of no disability). Additionally, the condition of the claimant's ankles at the time of her hearing – and the ALJ's consideration of their appearance -- is not evidence that exists in the administrative record. This Court's review is limited to the agency record developed in conjunction with the decision before it. As the Fifth Circuit has made clear, this Court is limited in its review of the Commissioner's determination, which is based on the record that was available to the Commissioner at the time she made her final determination. *See Carrier v. Sullivan,* 944 F.2d 243, 247 (5th Cir.1991) (explaining that the court is "constrained by the record which was available to the ALJ" and "cannot compare the ALJ's foresight with our own hindsight"). Under these rules, the ALJ's failure to evaluate the claimant's ankles herself was not error, given that the medical evidence in the administrative record substantially supports the ALJ's findings.

**6. The ALJ did not err in finding that claimant could perform her past relevant work as a bookkeeper as such finding is supported by substantial evidence in the record.**

The claimant argues that the ALJ erred in finding that she has past relevant work as a bookkeeper. The claimant testified at her hearing that from 1994 to 2012, she worked for Southern Cooperative Development Fund ("SCDF"), a development fund with several non-profit subsidiaries. One of the subsidiaries she worked for was Zydeco Community Housing. The claimant testified that when she worked for

SCDF, she worked mainly as a bookkeeper, where she handled payroll and was at her desk for most of the day.[51]  While working for Zydeco, she testified that she was required to be mobile in the community, to move furniture and other items, visit building sites to confirm compliance, and go out to applicants to interview and qualify them to participate in the programs.[52]  Thus, the claimant argues that her past relevant work was not limited to typical bookkeeping duties and responsibilities. The claimant also argues she is not qualified to perform the duties of a teacher's aide position referenced in the ALJ's Decision.

At her hearing, the VE listened to the claimant's testimony regarding her work and, in his expert opinion, stated that the claimant's past relevant work included work as a bookkeeper.[53]  Based, in part, on this testimony, the ALJ found that the claimant's past relevant work included work as a bookkeeper. *See Biestek*, 139 S.Ct. at 1154, 1157 (providing that the substantial evidence threshold is "not high" and courts should "defer[] to the presiding ALJ").  The ALJ also made the finding that the claimant could perform the job of bookkeeper as generally performed in the national economy, which would not involve the specific ancillary duties associated with the claimant's specific past work.[54]  This finding is supported by substantial

---

[51]  Tr. 100.
[52]  Tr. 100-03.
[53]  Tr. 108.
[54]  Tr. 21.

evidence in the record, and the undersigned concludes, therefore, that this finding was not in error.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned finds that the ALJ's decision finding that the claimant is not disabled is supported by substantial evidence in the record. Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **AFFIRMED** and this matter dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds

of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE in Chambers on this 28th day of July, 2021.

_____

Carol B. Whitehurst
United States Magistrate Judge